**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| _____ )<br>MARINA PORTILLO, )<br>  )<br>  Plaintiff, )<br>  )<br>v. )<br>  )<br>INTIPUQUENO RESTAURANT, *et al.*, )<br>  )<br>  Defendants. )<br>_____ ) | Civil Action No. 8:15-cv-03909-PWG |

**MOTION AND MEMORANDUM IN SUPPORT THEREOF
FOR DEFAULT JUDGMENT AGAINST INTIPUQUENO
RESTAURANT AND TELVIS ELIZABETH GARCIA**

Plaintiff, Marina Portillo ("Plaintiff"), through her undersigned counsel, hereby requests

that the Court enter default judgment against both Defendants Intipuqueno Restaurant and Telvis

Elizabeth Garcia ("Defendants").[1]  In support thereof, Ms. Portillo states as follows:

I.      PROCEDURAL HISTORY

On December 22, 2015, Ms. Portillo filed a six (6) count Complaint against both

Defendants alleging: discrimination in violation of the Americans with Disability Act ("ADA"),

42 U.S.C. § 12112(a); violations of the Maryland Human Rights Act ("MHRA"), Md. Code

Ann., State Gov't § 20-606(a)(1)(i); violations of the Montgomery County Code ("MCC"),

Montgomery, Md., Code § 27-19(a)(1)(A); violations of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 206, 207(a); violations of the Maryland Wage & Hour Law ("MWHL"), Md. Code

Ann., Lab & Empl. §§ 3-413(b), 3-415(a); and violations of the Maryland Wage Payment and

Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-413(b), 3-507.2(a), (b).  Ms.

_____

[1] The Complaint incorrectly referenced Ms. Garcia as "Telbis Elizabeth."  Her correct name is
Telvis Elizabeth Garcia.

Portillo served all Defendants with the Complaint, Summonses, and Case Management Order, on January 12, 2016. *See* Summons Returned Executed, ECF No. 4. Defendants did not respond. Upon Defendants' failure to file an Answer to the Complaint, Ms. Portillo moved for Entry of Default against each Defendant, which this Court entered on March 30, 2016. *See* Req. for Entry of Default Against Defs., ECF No. 5; Order of Default, ECF No. 6. Ms. Portillo now moves for the entry of default judgment.

Ms. Portillo hereby withdraws her request that a jury decide damages.

## II.    FACTUAL BACKGROUND

### A. Introduction

This Complaint arises from Ms. Portillo's employment with Defendants. She worked as a server at Intipuqueno Restaurant in Silver Spring, Maryland, from January 2013 to June 29, 2014. Pl. Decl. ¶ 2 (Exhibit 1 attached hereto); Compl., ECF No. 1, ¶ 14. Defendant Garcia owns and operates Intipuqueno Restaurant. Compl., ECF No. 1, ¶ 22. Ms. Portillo brings claims against Defendants of discrimination based on disability, as well as claims under federal and state wage and hour laws.

### B. Parties

Ms. Portillo is a female adult resident of Maryland. Compl., ECF No. 1, ¶ 13. At all times relevant to this Complaint, Ms. Portillo was an employee of Defendants, at their 2504 Ennalls Avenue, Silver Spring, Maryland 20902, location. Pl. Decl. ¶ 2; Compl., ECF No. 1, ¶ 31. Ms. Portillo suffers from epilepsy. Pl. Decl. ¶ 17; Compl., ECF No. 1, ¶ 15.

Defendant Intipuqueno Restaurant is a full-service Latin American restaurant and bar, serving residents of Maryland and other states. Pl. Decl. ¶ 3; Compl., ECF No. 1, ¶ 24. It is a Maryland corporation engaged in commerce, with its principle place of business at 2504 Ennalls

Avenue, Silver Spring, Maryland 20902, in Montgomery County, Maryland. Compl., ECF No. 1, ¶ 20.

Defendant Garcia is an adult resident of Maryland. Compl., ECF No. 1, ¶ 21. At all times relevant to this Complaint, Defendant Garcia owned and operated Intipuqueno Restaurant. Pl. Decl. ¶ 4; Compl., ECF No. 1, ¶ 22. Defendant Garcia supervised Ms. Portillo and controlled the terms and conditions of her employment, regulating her work schedule, employment status, and rate of pay. Pl. Decl. ¶ 5; Compl., ECF No. 1, ¶¶ 33-36. She monitored Ms. Portillo during her shifts and evaluated her job performance. Compl., ECF No. 1, ¶ 35. Defendant Garcia also exercised the power to assign Ms. Portillo tasks and provided instructions for carrying out those tasks. Pl. Decl. ¶ 5; Compl., ECF No. 1, ¶ 34.

C. <u>Defendants Unlawfully Failed to Pay Plaintiff for the Work She Performed</u>

In January 2013, Defendants hired Ms. Portillo as a server at Intipuqueno Restaurant in Silver Spring, Maryland. Compl., ECF No. 1, ¶ 30. She worked at Intipuqueno Restaurant until June 29, 2014. Pl. Decl. ¶ 2; Compl., ECF No. 1, ¶ 31. Throughout her employment with Defendants, Ms. Portillo worked over 40 hours per week. Pl. Decl. ¶ 8. Ms. Portillo's regular work schedule was approximately as follows:

> Wednesday, from 5:00 p.m. to Thursday, 2:30 a.m.;
>
> Thursday, from 5:00 p.m. to Friday, 3:30 a.m.;
>
> Friday, 2:00 p.m. to Saturday, 3:00 a.m.;
>
> Saturday, 2:00 p.m. to Sunday, 3:00 a.m.; and
>
> Sunday, 11:00 a.m. to Monday, 3:00 a.m.

Pl. Decl. ¶ 9. In addition to the hours referenced above, at least once a week, Defendants required Ms. Portillo to report to work at 10:00 a.m. in order to staff special events. Pl. Decl. ¶

10. The special events occurred on various days of the week, but most often on Wednesdays or on the weekends. *Id.* These special events added at least seven additional hours to Ms. Portillo's workweek, making her total number of hours of work per week approximately 69 hours. Pl. Decl. ¶¶ 10-11.

Defendants never paid Ms. Portillo for her work performed at Intipuqueno Restaurant, nor informed her that they were taking a "tip credit" towards her wages. Pl. Decl. ¶¶ 12, 14; Compl., ECF No. 1, ¶ 39. The only compensation Ms. Portillo received while working for Defendants at Intipuqueno Restaurant were the tips she obtained from her customers. Pl. Decl. ¶ 13; Compl., ECF No. 1, ¶ 40. Defendants did not display posters or other forms of notification informing Ms. Portillo of the minimum wage, overtime payments, or laws prohibiting discrimination in the workplace. Pl. Decl. ¶ 15; Compl., ECF No. 1, ¶ 43. As will be discussed below, because Defendants did not comply with the federal and state wage and hour laws, Defendants owe Ms. Portillo minimum wages and overtime wages for all hours worked, plus liquidated damages pursuant to federal and state law.

D. <u>Defendants Unlawfully Discharged Plaintiff Because of Her Disability</u>

Defendants discriminated against Ms. Portillo based on disability when they discharged her because she suffered an epileptic seizure at work, in direct violation of federal, state, and local antidiscrimination laws.

On June 29, 2014, while working at Intipuqueno Restaurant, Ms. Portillo suffered an epileptic seizure, during which time she became unconscious. Pl. Decl. ¶ 17; Compl., ECF No. 1, ¶ 52. A customer called an ambulance that took her to Holy Cross Hospital. Pl. Decl. ¶ 18; Compl., ECF No. 1, ¶ 53. The hospital released Ms. Portillo later that day. Pl. Decl. ¶ 19; Compl., ECF No. 1, ¶ 54.

After her seizure, Defendants did not schedule Ms. Portillo to work until July 2, 2014.  Pl. Decl. ¶ 20;  Compl., ECF No. 1, ¶ 55.  On July 1, 2014, Blanca Gunuza, a manager at Intipuqueno Restaurant, informed Ms. Portillo that Defendants were discharging her because she had suffered an epileptic seizure at work.  Pl. Decl. ¶ 21; Compl., ECF No. 1, ¶ 56.

Ms. Portillo immediately began looking for a new job but was not able to obtain one until approximately November 26, 2014, when she began working at Riverside Restaurant in Wheaton, Maryland. Decl. ¶¶ 22-23.  As a result, Ms. Portillo suffered economic harm in the form of lost wages for the five months she was unemployed. Compl., ECF No. 1, ¶ 57.

III.    ARGUMENT

A.    Defendants Have Halted the Adversary Process by Failing to Respond to Plaintiff's Complaint.

Upon a Rule 55(b) Motion for Default Judgment, a Ms. Portillo may overcome the Fourth Circuit's "strong policy that cases be decided on the merits" and seek damages from a defendant without a hearing on the merits when the "adversary process has been halted because of an essentially unresponsive party."  *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993).

Both Defendants in this matter have been unresponsive to Ms. Portillo's Complaint.  Ms. Portillo filed her Complaint alleging violations of federal, Maryland, and local antidiscrimination and wage and hour laws arising from her employment with Defendants on December 22, 2015. *See* Compl., ECF No. 1,, ECF No. 1.  She served the Summonses, Complaint, and Case Management Order in this action on Defendants Intipuqueno Restaurant and Garcia through a private process server on January 12, 2016, providing them ample notice of this pending

litigation.  *See* Summons Returned Executed, ECF No. 4.  Pursuant to Fed. R. Civ. P.

12(a)(1)(A)(i), Defendants' deadline to respond to Ms. Portillo's Complaint was February 2,

2016.  *See id.*  However, Defendants have ignored the court proceedings and have refused to

engage in the adversary process.  Defendants have failed to respond to Ms. Portillo's Complaint,

have not requested or been granted additional time to respond, and have not responded after the

Clerk entered a default.  *See* Order Directing Pl. to File and Serve by Mail on Defs. a Mot. for

Default J., ECF No. 7.  Accordingly, default judgment is appropriate.  *See SEC v. Lawbaugh*,

359 F. Supp. 2d 418, 421 (D. Md. 2005) (concluding that default judgment is "appropriate when

the adversary process has been halted because of an essentially unresponsive party").

   B.  Plaintiff's Unchallenged Factual Allegations Constitute Legitimate Causes of
       Action for Which Plaintiff Is Entitled to Damages.

   Treatment of a Rule 55(b) Motion for Default Judgment is discretionary; however, the

court has typically applied a two-step analysis to determine whether default judgment is

appropriate.  *See Lawbaugh*, 359 F. Supp. 2d at 421; *see also Clancy v. Skyline Grill, LLC, et al.*,

2012 WL 5409733, at *2-3 (D. Md. Nov. 5, 2012).  First, the court takes as true the well-pleaded

factual allegations in the complaint, other than those pertaining to damages.  *Clancy*, 2012 WL

5409733, at *2 (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001));

*see also Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, LLC*, 2009 WL

2982951, at *1 (D. Md. Sept. 14, 2009) (citing *Lawbaugh*, 359 F. Supp. 2d at 422) ("Upon

default, the well-pled allegations in a complaint as to liability are taken as true, although the

allegations as to damages are not.") (internal citations omitted); *see also* Fed. R. Civ. P. 8(b)(6)

("An allegation—other than one relating to the amount of damages—is admitted if a responsive

pleading is required and the allegation is not denied.").  Based on these allegations, the court

determines whether the "unchallenged factual allegations constitute a legitimate cause of action."

*Clancy*, 2012 WL 5409733, at *2 (quoting *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010)).  Second, if the court finds that the moving party has established liability, it makes "an independent determination regarding the appropriate amount of damages." *Id.* at *3 (citing *Samler*, 725 F. Supp. 2d 491, 494).

Ms. Portillo's Complaint is well-pled and corroborated by her declaration.  As such, Ms. Portillo's allegations constitute legitimate causes of action against Defendants as follows:

- Intipuqueno Restaurant and Garcia for failing to pay Ms. Portillo all wages earned in violation of the FLSA, 29 U.S.C. § 201 *et seq.*; the MWHL, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*; and the MWPCL, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*; and

- Intipuqueno Restaurant and Garcia for discrimination against Ms. Portillo on the basis of disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*; the MHRA, Md. Code Ann., State Gov't § 20-601 *et seq.*; and the MCC, Montgomery, Md., Code § 27-19 *et seq.*

Default judgment is appropriate, and Ms. Portillo requests that the Court award her lost wages and liquidated damages for her wage and hour claims, and lost wages for her disability discrimination claims.

    a.  The Allegations in the Complaint Are Well-Pled and Default Judgment Should Be Entered on All Counts.

        i.  Count IV: Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; and

           Count V: Violation of the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*

During the timeframe relevant to this Complaint, the FLSA and the MWHL mandated that employees receive a minimum hourly wage of $7.25 for all hours worked up to forty hours

in a single workweek.  29 U.S.C. § 206 (a)(1)(C); <u>Md. Code Ann.</u>, Lab. & Empl. § 3-413(b).

Under the FLSA, for each hour worked in excess of forty hours in one week, the employer must

pay the employee one and one-half times (time and one-half) her regular rate of pay.[2]  29 U.S.C.

§ 207(a)(1).  Under both the FLSA and the MWHL, an employer can pay a tipped employee less

than the standard minimum wage if the employer complies with the statutory requirements to

receive a "tip credit."  29 U.S.C. § 203(m); 29 C.F.R. § 531.50; <u>Md. Code Ann.</u>, Lab. & Empl. §

3-419.

 There are statutory requirements for an employer to take advantage of the tip credit.

First, the employee must earn more than $30 per month in tips.  29 U.S.C. § 203(t); <u>Md. Code</u>

<u>Ann.</u>, Lab. & Empl. § 3-419(a)(1)(i).  Second, the employer must pay the tipped employee a

wage of not less than $2.13 per hour under the FLSA, and $3.63 in Maryland under the MWHL,

provided the sum of the employee's sub-minimum wage and tips received total at least $7.25 per

hour, the applicable minimum wage.  29 U.S.C. § 203(m); <u>Md. Code Ann.</u>, Lab. & Empl. § 3-

419(c).  The employer must also put its employees on notice that the employer is claiming a tip

credit.  <u>Md. Code Ann.</u>, Lab. & Empl. § 3-419(a)(1)(ii); 29 C.F.R. § 531.59(b).  Finally, the

employer must allow employees to retain all the tips they earn. 29 U.S.C. § 203(m); <u>Md. Code</u>

<u>Ann.</u>, Lab. & Empl. § 3-419(a)(1)(iii).  An employer's failure to comply with any of these

requirements negates the employer's right to invoke the "tip credit."  *Richard, et al. v. Marriott*

*Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).

 As noted above, Ms. Portillo's Complaint and Declaration evidence that Defendants did

not comply with the "tip credit" requirements.  Defendants routinely failed to pay Ms. Portillo a

---

[2] Restaurant workers were excluded from overtime coverage under the MWHL at the time Ms.
Portillo worked for Defendants.  That exclusion was removed in the July 2014 amendments to
the MWHL.  *See* Maryland Minimum Wage Act of 2014, ch. 262 (H.B. 295); <u>Md. Code Ann.</u>,
Lab. & Empl. § 3-415(b)(3) (2013).

minimum wage for all hours worked.  Pl. Decl. ¶ 12; Compl., ECF No. 1, ¶ 39.  Additionally,

Defendants failed to pay Ms. Portillo one and one-half times her regular rate of pay for all hours

worked in excess of 40 hours per workweek, at a time when she worked an average of 69 hours

per week.  Pl. Decl. ¶ 12; Compl., ECF No. 1, ¶ 39. By not paying her anything for her work at

Intipuqueno Restaurant, Defendants unlawfully exceeded the maximum tip credit that an

employer can apply to wages, as set forth in the FLSA and the MWHL.  29 U.S.C. § 203(m);

Md. Code Ann., Lab. & Empl. § 3-419.

Moreover, Defendants failed to notify Ms. Portillo, either verbally or in writing, of the

relevant federal and state law provisions governing the use of the tip credit.  Pl. Decl. ¶¶ 14-15;

Compl., ECF No. 1, ¶ 43.  These violations of the "tip credit" requirements mean that

Defendants cannot take advantage of the federal or state "tip credit" provisions and are liable to

Ms. Portillo for the full minimum wage and applicable overtime wages.  See *Dorsey v. TGT*

*Consulting LLC*, 888 F. Supp. 2d 670, 675 (D. Md. 2012) ("an employer may utilize the tip

credit provision of the FLSA only where the employees are informed by the employer of the

relevant provisions of the FLSA").

Ms. Portillo's wage claim is a "sum certain" representing liquidated damages that are

quantifiable via a motion for default judgment.  *Clancy*, 2012 WL 5409733, at *2.  Therefore,

Defendants owe Ms. Portillo the minimum wage of $7.25 per hour for the first 40 hours in any

one workweek, and owe her time and one-half of minimum wage, $10.88 per hour (1.5 X

$7.25/hour), for all hours worked in excess of 40 hours in any one workweek.  The calculation of

these damages is as follows:

For approximately one year and six months, Ms. Portillo's work schedule at Intipuqueno

Restaurant was the following:

Wednesday from 5:00 p.m. to Thursday, 2:30 a.m.;

Thursday, from 5:00 p.m. to Friday, 3:30 a.m.;

Friday, 2:00 p.m. to Saturday, 3:00 a.m.;

Saturday, 2:00 p.m. to Sunday, 3:00 a.m;

Sunday, 11:00 a.m. to Monday, 3:00 a.m.

Pl. Decl. ¶ 9.  As noted above, Ms. Portillo also worked one event per week on Wednesdays or the weekends at 10:00 a.m. for seven hours per week.  Pl. Decl. ¶ 10. As such, Ms. Portillo worked, on average, 69 hours per week.  Pl. Decl. ¶ 11.  Her minimum wage and overtime claim under the FLSA is as follows:

| | | | |
|---|---|---|---|
| Minimum wages owed: | 40 hours x 78 weeks x $7.25/hr | = | $22,620.00 |
| Overtime wages owed: | 29 hours x 78 weeks x $10.88/hr | = | $24,610.56 |
| Total wages owed: | $22,620 + $24,610.56 | = | $47,230.56 |

Pl. Decl. ¶ 16.  Thus, pursuant to the FLSA, for her time working at Intipuqueno Restaurant, Ms. Portillo earned, but was not paid, $47,230.56 in minimum and overtime wages.  Pursuant to 29 U.S.C. § 216(b), Ms. Portillo should be awarded the underlying amount owed to her plus an equal amount in liquidated damages, as well as attorney's fees and costs.  Thus, on her minimum wage and overtime counts (Counts IV and V), Ms. Portillo prays the Court enter judgment in the amount of $94,461.12, plus attorney's fees and costs.

Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."  29 U.S.C. § 203(d).  Accordingly, individuals who own, operate, and/or exert control over employees' working conditions and wages are statutory "employers."  As detailed above and in Ms. Portillo's declaration, Defendant Garcia was intimately involved in the running of Intipuqueno Restaurant.  She was the owner and operator of Intipuqueno Restaurant, as well as Ms. Portillo's supervisor at Intipuqueno Restaurant.  Pl. Decl. ¶¶ 4-5; Compl., ECF No. 1, ¶ 32-33.  Defendant Garcia was responsible for hiring employees, directing their work, evaluating their performance, and determining their work

schedules and pay.  Compl., ECF No. 1, ¶ 33-36.  Defendant Garcia acted in the interest of Intipuqueno Restaurant, exerted control and authority over Ms. Portillo, and thus was Ms. Portillo's statutory "employer."

Additionally, the definition of "employer" under the FLSA and the MWHL incorporates liability for any individual who made the decision not to pay Ms. Portillo the wages owed to her and/or individuals who exert control and authority over the employees of the enterprise.  *See* 29 U.S.C. § 203(d); <u>Md. Code Ann.</u>, Lab. & Empl. § 3-401(c) (defining the term "employer" as a person who acts directly or indirectly in the interest of another employer with an employee). Given this this definition, as well as the remedial purpose of wage statutes, courts have consistently held that individuals, such as Defendant Garcia, who exerted control and authority over an employee such as Ms. Portillo, are statutory "employers" for purposes of enforcement of wage and hour protections.  *See, e.g.*, *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d  962, 965 (6th Cir. 1991) (citing *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)); *Brock v. Hamad*, 867 F.2d 804 (4th Cir. 1989); *Chao v. Self Pride, Inc.*, 2005 WL 1400740, at *12 (D. Md. June 14, 2005) (internal citations omitted).

Being that the allegations in Ms. Portillo's Complaint as to her wage claim are precise and thorough, they properly articulate a legitimate cause of action against both Defendants.  For the reasons set forth herein and in Ms. Portillo's Complaint, both Defendants are jointly and severally liable under the FLSA and MWHL for wage violations, and Ms. Portillo requests that the Court enter judgment on these counts for $94,461.12, plus attorney's fees and costs.

      ii.  Count VI: Violation of the Maryland Wage Payment and
           Collection Law, <u>Md. Code Ann.</u>, Lab. & Empl. § 3-501 *et seq.*

The MWPCL requires regular payment of wages by an employer to an employee. <u>Md.</u>
<u>Code Ann.</u>, Lab. & Empl. § 3-502(a)(1).  The MWPCL also mandates employers to pay an
employee "all wages due for work that the employee performed before the termination of
employment, on or before the day on which the employee would have been paid the wages if the
employment had not been terminated." *Id.* at § 3-505(a).  Ms. Portillo incorporates the
allegations regarding the failure to pay her minimum and overtime wages for her work at
Intipuqueno Restaurant in Counts IV and V above as though restated herein in support of this
claim.

As stated previously, Defendants did not pay Ms. Portillo minimum wages and overtime
wages owed to her during her employment or at the cessation of her employment with
Intipuqueno Restaurant.  These violations of the MWPCL articulate a legitimate cause of action
against both Defendants.  This wage claim is a "sum certain" representing liquidated damages
that are quantifiable via a motion for default judgment.  *Clancy*, 2012 WL 5409733 at *2.

Accordingly, for the reasons set forth herein and in Ms. Portillo's Complaint, Defendants
are liable under the MWPCL for wage violations.  There is no bona fide dispute that Defendants
owe Ms. Portillo these wages.  Further, these unpaid wages are subject to the treble damages
provision of the MWPCL. *See Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 667 (Md.
2014) (clarifying that employees may pursue claims of unlawfully withheld overtime wages
under the MWPCL and recover up to three times the unpaid wage).  Pursuant to <u>Md. Code Ann.,</u>
<u>Lab. & Empl.</u> § 507.2, Ms. Portillo requests that the Court enter judgment against Defendants,
jointly and severally, for $141,691.68, three times the amount owed pursuant to the preceding
calculations, plus attorneys' fees and costs.

iii. Count I: Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

Count II: Violation of the Maryland Human Rights Act, <u>Md. Code Ann.</u>, State Gov't § 20-601 *et seq.*; and

Count III: Violation of the Montgomery County Code, <u>Montgomery, Md., Code</u> § 27-19 *et seq.*

The ADA, the MHRA, and the MCC prohibit employers from discharging any individual on the basis of disability. 42 U.S.C. § 12112(a); <u>Md. Code Ann.</u>, State Gov't § 20-606(a)(1)(i); <u>Montgomery, Md., Code</u> § 27-19(a)(1)(A). Defendants violated the ADA, the MHRA, and the MCC when they terminated Ms. Portillo because she has epilepsy.

The ADA prohibits discrimination against any "qualified individual with a disability," defined as an individual who can perform the essential functions of her position with or without a reasonable accommodation. 42 U.S.C. § 12111(8). To sustain a cause of action for wrongful discharge under the ADA based on an actual or perceived disability, Ms. Portillo must establish a *prima facie* case by evidencing a set of facts that would enable the fact-finder to conclude that it is more likely than not that the adverse employment action was the product of discrimination. *See Ennis v. Nat'l Ass'n of Bus. Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995). In such cases, a plaintiff must prove, by a preponderance of evidence, that (1) she was a qualified individual with a disability; (2) she was discharged; (3) at the time of her discharge, she was performing at a level that met her employer's legitimate expectations; and (4) the circumstances of her discharge give rise to a reasonable inference of unlawful discrimination. *Id.* (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Under the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.

§ 12102(1). The ADA must be "construed in favor of broad coverage of individuals," and the term "substantially limits" must be interpreted liberally. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014). "Major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). An impairment that is episodic is a disability if it would substantially limit a major life activity when active. *Id.* § 12102(4)(D). "The extent to which an impairment limits an individual's major life activities must be determined without regard to the availability of mitigating measures such as medicine or assistive devices." *Granzow v. Eagle Food Ctrs., Inc.*, 27 F. Supp. 2d 1005, 1108 (N.D. Ill. 1998).

Maryland courts look to cases interpreting the ADA for guidance in construing the MHRA and the MCC. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007) (using decisions interpreting the ADA to analyze disability discrimination claim brought under the MHRA); *Ridgely v. Montgomery County*, 883 A.2d 182 (Md. 2005) (using decisions interpreting the ADA to analyze disability discrimination claim brought under the MCC). Under the MHRA, the term "disability" means "a physical disability [or mental impairment] . . . *including epilepsy.*" Md. Code Ann., State Gov't § 20-601(b)(1)(i) (emphasis added). It also includes "being regarded as having a physical or mental impairment." *Id.* § 20-601(b)(1)(iii). The MCC defines "disability" as "a physical or mental impairment that substantially limits one or more of an individual's major life activities, a record of having such an impairment, being associated with an individual with a disability, or being regarded as having such an impairment." MCC § 27-6.

Ms. Portillo suffers from epilepsy, a medical condition which courts have held to constitute a disability under the ADA. *See EEOC v. Rite Aid Corp.*, 750 F.Supp.2d 564, 569 (D.

Md. 2010) ("epilepsy is one of the disabling conditions that Congress contemplated when it passed the ADA"); *Reynolds v. Brock,* 815 F.2d 571, 573 –574 (9th Cir.1987) (finding epilepsy to be a handicap under the Rehabilitation Act, in part because federal and state regulations and policies restrict the types of jobs available to epileptics); *Taylor v. Dover Elevator Sys., Inc.*, 917 F. Supp. 455, 461–462 (N.D. Miss. 1996) ("Federal regulations support the conclusion that epilepsy should normally be considered an impairment under the ADA"); 29 C.F.R. § 1630 App. (ADA Interpretive Guide) (interpreting 29 C.F.R. § 1630.2(h)) ("an individual with epilepsy would be considered to have an impairment even if the symptoms of the disorder were completely controlled by medicine"); 29 C.F.R. § 1615.103 (epilepsy is a "physical impairment" under Rehabilitation Act).

Ms. Portillo is a qualified individual with a disability under the ADA, the MHRA and the MCC because she was performing her job to her employer's expectations, and her epilepsy causes her to suffer seizures during which she loses consciousness, thus rendering her unable to perform major life activities such as caring for herself, performing manual tasks, seeing, walking, standing, and speaking. *See, e.g.*, *EEOC v. Rite Aid Corp.*, 750 F.2d 564, 569–70 (D. Md. 2010) (holding that a plaintiff with epilepsy was disabled within the meaning of the ADA because he suffered seizures during which he lost the ability to stand, speak, care for himself, walk, see, and hear); *Otting v. J.C. Penney Co.*, 223 F.3d 704, 710–711 (8th Cir. 2000) (holding that a plaintiff with epilepsy was disabled within the meaning of the ADA because she suffered seizures, which substantially limited the major life activities of walking, seeing, and speaking); *Granzow v. Eagle Food Ctrs., Inc.*, 27 F. Supp. 2d 1005, 1009 (N.D. Ill. 1998) (holding that a plaintiff with epilepsy was disabled within the meaning of the ADA because, during a seizure, she was limited in her ability to work, walk, talk, see, hear, speak, and care for herself); *Vazquez*

*v. Bedsole,* 888 F.Supp. 727, 731 (E.D.N.C. 1995) (epileptic seizures held to constitute a disability at summary judgment stage).

Ms. Portillo is also considered a qualified individual with a disability under the ADA, the MHRA and the MCC because the management at Intipuqueno Restaurant regarded her as being disabled, as evidenced by their decision to fire her based on her epilepsy, an impairment that is not transitory or minor. *See* 29 C.F.R. § 1630.2(g)(iii) (an individual is "regarded as" being disabled when the individual is subjected to an action prohibited by the ADAAA, such as termination, because of an actual or perceived impairment that is not both transitory and minor); *see also* Md. Code Ann., State Gov't § 20-601(b)(1)(iii); Montgomery, Md., Code § 27-6. Furthermore, at the time of her discharge, Defendants never indicated that Ms. Portillo was not meeting their legitimate expectations, as they never expressed any dissatisfaction with her work performance.

Defendants also discriminated against Ms. Portillo under the ADA, the MHRA, and the MCC when they terminated her *because* she suffered an epileptic seizure at work and because of their perception, evidenced by their decision to discharge Ms. Portillo, that her medical condition made her unfit to work. *See* 42 U.S.C. § 12112(a); Md. Code Ann., State Gov't § 20-606(b)(1)(iii); Montgomery, Md., Code § 27-19(a)(1)(A). This stated reason for Ms. Portillo's termination, expressed by Blanca Gunuza, Ms. Portillo's manager at Intipuqueno, is unlawful and constitutes direct evidence of discrimination. *See Hill v. Lockheed Martin Logistics Management*, 354 F.3d 277, 284-85 (4th Cir. 2004) (defining direct evidence as "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision"); *Gott v. Town of Chesapeake Beach, Md.*, 44 F. Supp. 3d 610, 616 (D. Md. 2014) (explaining that where a plaintiff "has direct evidence of discrimination she 'may prevail without proving all the elements of a prima face case'") (*citing*

*Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002)). As such, Defendants actions have violated federal, state, and local antidiscrimination laws.

      b. <u>Defendants Intipuqueno Restaurant and Garcia Are Jointly Liable Under State and County Law.</u>

The anti-discrimination provisions set forth in the MHRA and the MCC apply to Defendants Intipuqueno Restaurant and Garcia equally. The Maryland Code defines an "employer" as "(i) a *person* that: (1) is engaged in an industry or business; and (2) has 15 or more employees […]; and (ii) an agent of a person described in item (i) of this paragraph." <u>Md. Code Ann.</u>, State Gov't § 20-601(d) (emphasis supplied). Accordingly, Intipuqueno, as a business, and Ms. Garcia, as its agent, are statutory "employers" under the Maryland Code if they employ 15 or more employees.

Maryland law authorizes a person who is subjected to a discriminatory act prohibited by the Montgomery County Code to maintain a civil action for damages, injunctive relief, or other civil relief, against the person that committed the discriminatory act. <u>Md. Code Ann.</u>, State Gov't § 20-1202. The MCC defines an employer as "any person who employs one or more individuals in the County, either for compensation or as a volunteer." <u>Montgomery, Md., Code</u> § 27-6. The MCC further defines "person" as "an individual; [or] a legal entity." *Id.* This definition means that an individual as well as a business entity may be a statutory "employer" under the MCC.

Defendant Intipuqueno Restaurant is a statutory employer under the MCC as it employed one or more individuals, including Plaintiff, during all times relevant to this Complaint. Defendant Intipuqueno Restaurant is also a statutory employer under the MHRA, as it was engaged in the restaurant business and had 15 or more employees during all times relevant to this Complaint. Pl. Dec. ¶ 6; Compl., ECF No. 1, ¶ 28.

Defendant Garcia, as the owner and operator of Intipuqueno Restaurant, as well as a supervisor of all employees, is an agent of Intipuqueno Restaurant and an "employer" under the MCC and the MHRA. Accordingly, Defendants Intipuqueno Restaurant and Garcia are both liable for damages under the MCC and the MHRA arising from their discriminatory acts towards Ms. Portillo, when they discharged her for having an epileptic seizure at work.

The allegations in Ms. Portillo's Complaint as to these Claims are precise and thorough, and properly articulate a legitimate cause of action against both defendants. For the reasons set forth herein and in Ms. Portillo's Complaint and Declaration, Defendants Intipuqueno Restaurant and Telvis Elizabeth Garcia are liable under the ADA, the MHRA, and MCC for discrimination against Ms. Portillo on the basis of her disability when they discharged her because of her epilepsy.

Ms. Portillo requests that the Court award Ms. Portillo lost wages to compensate her for the civil rights violations described above, which caused Ms. Portillo to be out of work from June 29, 2014, to November 26, 2014 (five months, or approximately 21.5 weeks). Pl. Decl. ¶¶ 21-23. Based on a 69-hour workweek, Ms. Portillo's claim for lost wages resulting from her discriminatory discharge is as follows:

| | | | |
|---|---|---|---|
| Minimum wages owed: | 40 hours x 21.5 weeks x $7.25/hr | = | $6,235.00 |
| Overtime wages owed: | 29 hours x 21.5 weeks x $10.88/hr | = | $6,783.68 |
| Total wages owed: | $22,620 + $24,610.56 | = | $13,018.68 |

Ms. Portillo thus respectfully requests that the Court award her $13,018.68 in lost wages arising from her discriminatory discharge.

IV.   ATTORNEY'S FEES AND COSTS

Pursuant to the statutes upon which Ms. Portillo bases her wage and hour and discrimination claims, a prevailing plaintiff should be awarded her attorney's fees and costs. *See* 29 U.S.C. §

216(b); 42 U.S.C. § 12205; <u>Md. Code Ann.</u>, State Gov't §§ 20-1015, 20-1202(d); <u>Md. Code Ann.</u>, Lab & Empl. §§ 3-427(a)(3), 3-507(b)(1).

Mr. Portillo prays that the Court grant her 14 days from the entry of any order and judgment awarding her damages on her claims to submit a petition for the payment of attorney's fees and costs. *See* Fed.R.Civ. P. 54(d).

V.    <u>CONCLUSION</u>

For the reasons set forth in this memorandum in support of Plaintiff's Motion for Default Judgment, Plaintiff respectfully requests that this Court grant this Motion and enter judgment as follows:

1.  As to Counts IV and V, enter judgment against Defendants Intipuqueno Restaurant and Garcia, jointly and severally, in the amount of $94,461.12, plus attorney's fees and costs;

2.  As to Count VI, enter judgment against Defendants Intipuqueno Restaurant and Garcia, jointly and severally, in the amount of $141,691.68, plus attorney's fees and costs;[3]

3.  As to Count I, enter judgment against Defendant Intipuqueno Restaurant, in the amount of $13,018.68;

4.  As to Count II, enter judgment, jointly and severally, against Defendants Intipuqueno Restaurant and Garcia, in the amount of $13,018.68;

5.  As to Count III, enter judgment, jointly and severally, against Defendants Intipuqueno Restaurant and Garcia, in the amount of $13,018.68;[4] and

---

[3] If judgment is granted as to the amount requested under Count III, the MWPCL, that amount would include the amounts requested under Count I and II, the other wage claims, as no "double recovery" is available.

6. Permit Ms. Portillo to shall submit any motion for attorney's fees and costs 14 days from entry of any Order and Judgment.

Respectfully submitted,

_____/s/_____
Daniel A. Katz (Bar No. 13026)
Marlene S. Ailloud (Bar No. 18974)
Lucy B. Bansal (Bar No. 06639)
Gary M. Gilbert & Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD  20910
T: (301) 608-0880
F: (301) 608-0881
dkatz@ggilbertlaw.com
mailloud@ggilbertlaw.com
lbansal@ggilbertlaw.com

*Counsel for Ms. Portillo*

---

[4] Plaintiff recognizes that because there is no "double recovery," only a total sum of $13,018.68 is available for damages under Counts I, II and II combined.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of June, 2016, the foregoing was mailed by first class mail to:

Intipuqueno Restaurant
c/o Telvis Elizabeth Garcia
2504 Ennalls Avenue
Silver Spring, MD 20902

Telvis Elizabeth Garcia
2504 Ennalls Avenue
Silver Spring, MD 20902

and a courtesy copy was mailed to:

Mark G. Chalpin, Esq.
116 Billingsgate Lane
Gaithersburg, MD 20877

_____/s/_____
Daniel A. Katz (Bar No. 13026)
Marlene S. Ailloud (Bar No. 18974)
Lucy B. Bansal (Bar No. 06639)