IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| MARINA PORTILLO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTIPUQUENO RESTAURANT, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 8:15-cv-3909-PWG |

### PLAINTIFF'S MOTION AND MORANDUM IN SUPPORT THEREOF FOR ATTORNEYS' FEES AND COSTS

Plaintiff respectfully requests that this Court award Plaintiff Marina Portillo her reasonable attorneys' fees of $31,838.00 and costs of $654.54, pursuant to *See* 29 U.S.C. § 216(b); 42 U.S.C. § 12205; Md. Code Ann., State Gov't §§ 20-1015, 20-1202(d); Md. Code Ann., Lab & Empl. §§ 3-427(a)(3), 3-507(b)(1), and this Court's Order and Judgment of December 8, 2016. ECF No. 9. Plaintiff is the prevailing party by virtue of that Order and Judgment, finding in her favor under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12112(a); the Maryland Human Rights Act ("MHRA"), Md. Code Ann., State Gov't § 20-606(a)(1)(i); the Montgomery County Code ("MCC"), Montgomery, Md., Code § 27-19(a)(1)(A); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207(a); the Maryland Wage & Hour Law ("MWHL"), Md. Code Ann., Lab & Empl. §§ 3-413(b), 3-415(a); and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §3-507.2(a), (b). In support of this request, Plaintiff states as follows.

1

I.  Case History

Ms. Portillo contacted counsel (Law Office of Gary M. Gilbert & Associates, P.C. or "GMGA") after Defendants terminated her from her position as a server at the Intipuqueno Restaurant in Silver Spring, Maryland. The firm conducted extensive interviews with Ms. Portillo and identified claims that Ms. Portillo could raise arising from her employment with and termination by Defendants.  Ms. Portillo retained the firm to represent her regarding claims that arose under the anti-discrimination provisions of federal, state and local laws, as well as claims that arose under federal, state and local wage and hour laws. The firm conducted initial legal research to confirm that her firing violated the anti-discrimination provisions of federal, state and local law.  Specifically, it was necessary to confirm that Ms. Portillo was a qualified individual with a disability, and thus protected by the anti-discrimination statutes pleaded.  In addition, the firm conducted legal research to support the argument that the method by which Defendants paid Ms. Portillo – they paid her only tips, no minimum wage or "tipped" minimum wage – violated the federal, state and local wage and hour statutes pleaded.

In December 2014 Plaintiff filed her discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Maryland Commission on Civil Rights. *See* exhibit 1 attached hereto. In June 2015, pursuant to a work sharing agreement, the EEOC transferred the case for investigation to the Montgomery County Office of Human Rights ("MCOHR"). On May 3, 2015, at Plaintiff's request, the MCOHR terminated its investigation without reaching a finding. *See* exhibit 2 attached hereto. At Plaintiff's request, the EEOC issued a "Notice of Right to Sue" on November 9, 2015. *See* exhibit 3 attached hereto.

Plaintiff filed suit on December 22, 2015.  ECF No. 1.  Service of the Complaint and Summonses was effected on January 7, 2016.  ECF No. 4. Defendant did not serve an answer or

2

otherwise plead, and Plaintiff filed for Default on February 5, 2016. ECF No. 5. Shortly thereafter, Attorney Mark Chalpin contacted undersigned Plaintiff's counsel and stated that he represented Defendants for purposes of trying to settle the lawsuit, and also stated that Defendants were not in good financial shape. *See* exhibit 4. In response to his request, Plaintiffs sent him a demand letter/settlement proposal on March 11, 2016. Plaintiff also requested Defendants provide specific financial documentation that would confirm whether Defendants were truly in financial distress. The financial documents, provided by Defendants' accountant on May 27, 2016, did not provide Plaintiff the requested information. *See* exhibit 5 (specific personal and financial information omitted for privacy reasons).

On June 27, 2016, Plaintiff moved for entry of default judgment against all Defendants on all counts. ECF No. 8. The Court granted that motion and entered judgment in favor of Plaintiff against all Defendants in the amount of $154,710.36 on December 8, 2016. This request for attorneys' fees and costs follows.

II. <u>Argument</u>

Pursuant to: the FLSA, 29 U.S.C. § 216(b); the ADA; 42 U.S.C. § 12205; <u>Md. Code Ann.</u>, State Gov't §§ 20-1015, 20-1202(d); and the MWHL and MWPCL, a prevailing plaintiff should be awarded her reasonable attorneys' fees and costs. As a general rule addressing the implementation of fee-shifting statutes, the Supreme Court has stated that fees should be awarded to the prevailing plaintiff unless the circumstances in a particular case indicate some good reason why a fee award is not appropriate. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937 (1983).

The entry of judgment in the amount of $154,710.36 in Plaintiff's favor against Defendants on all counts establishes her status as a prevailing party.

A. <u>The Attorneys' Fees Requested are Reasonable</u>

The starting point for establishing the proper amount of a fee award is the "lodestar," which is "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. When an applicant for fees has carried the burden of demonstrating that the hours and rate requested are reasonable, the result is a presumptively reasonable fee. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The resulting lodestar figure may be adjusted upward or downward in light of what are known as the *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (cited in *Hensley*, 461 U.S. at 430 n.3).[1] *See also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). The reasonableness of Plaintiff's request is established through an analysis of the *Johnson* factors, as set forth below.

Based on the foregoing, and the documentation and support provided herein, Plaintiff requests an award of fees and costs reflecting the lodestar calculation without adjustments; however, Plaintiff's counsel has exercised significant up-front billing judgment, and has voluntarily reduced their request for fees by 32.8% of the fees incurred litigating this matter.

---

[1] Most of these factors are also reflected in Maryland Lawyers Rules of Professional Conduct 1.5.

4

1. Time and Labor Required

The time and labor required to litigate this matter are detailed in the records attached at Exhibit 6-A, demonstrating the time/task records contemporaneously maintained by counsel's office, broken down by the categories listed in Appendix B of the Local Rules. The exhibit shows the identity of the time keeper, a description of the work task performed, the date the work was performed, and the amount of time necessary to perform the work, measured to the one-tenth of one hour. As detailed herein, the work was reasonably and necessarily performed in the case. Where possible, tasks are assigned to legal assistants or law clerks to keep costs down. The extent of the "no charged" time represents counsel's "up front" reduction in the reasonable costs and fees being requested in this petition, to streamline the fee petition process, as attorney's fees petitions "should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

2. Novelty and Difficulty of the Questions

This case involved the application of both established and evolving legal principles under federal and state and local anti-discrimination and wage and hour statutes. Plaintiff was obligated to research and analyze numerous legal issues, including coverage under the ADA and local statutes for an employee who suffers from epilepsy, as well as the legal implications of Defendants having failed to pay Plaintiff any wages.

3. Level of Skill Required to Perform the Legal Services Properly

To be successful, litigation on behalf of a Plaintiff raising discrimination and wage claims requires specialized skills and current knowledge of legal developments. For example, representing the Plaintiff involved numerous legal issues, such as: protections for an individual who suffers from epilepsy under the various anti-discrimination statutes; recordkeeping requirements under the wage and hour statutes, and the potential evidentiary issues that flow

therefrom; the requirements for an employer to be entitled to take the "tip credit" under the different wage and hour statutes; and, individual liability under the various statutes pleaded.

    4.   <u>The Preclusion of Employment by the Attorney due to Acceptance of the Case</u>

Plaintiff's counsel, Daniel A. Katz (Senior Counsel/Partner) and Associates Cori Cohen, Marlene Ailloud, and Lucy B. Bansal litigate in small private sector discrimination and wage and hour practice at the law firm. It was critical to spend sufficient time interviewing Plaintiff and the potential witnesses to her claims in the "front loading" of the fact investigation prior to filing suit. Plaintiff is not a sophisticated litigant and therefore significant time needed to be invested to explain to Ms. Portillo her rights under the statutes pleaded, the steps in litigation and her role and responsibilities as a plaintiff. Further, the fact that Defendants did not maintain the statutorily-required time records ensured that the calculation of damages was time-consuming

    5.   <u>Customary Fee</u>

Plaintiff's counsel seeks fees at the rates detailed in Appendix B to the Local Rules. As noted in the guidelines, the purpose of the published rates is "to make the fee petition less onerous by narrowing debate over the range of a reasonable hourly rate." (Appendix B, fn. 6). As stated in Exhibit "6," Daniel A. Katz graduated from law school in 1994, and, following a clerkship, entered private practice in April 1996. Mr. Katz's declaration includes a description of his extensive experience and practice in wage and hour litigation—including being one of few attorneys willing to represent low-wage non-English speaking employees—supporting an award at the 20 or more years of experience level of $475.00 per hour. Mr. Katz's declaration, as well as that of Mr. Freeman, supports Ms. Bansal's requested rate of $225.00 per hour, which is consistent with her experience and practice. Plaintiff also requests that Ms. Cohen, a fourth year attorney, and Ms. Ailloud, a 2013 law school graduate, be paid at the Appendix B rate of $225

consistent with their years of experience as attorneys. The rates requested in this petition are the rates the firm would charge for a fee-paying client in federal court litigation. *See* Exhibits "6" and "7" (Declarations of Daniel A. Katz and Andrew Freeman).

The rates requested in this petition also find support in the attached declarations of Attorneys Freeman, Goldsmith, and Zipin, Exhibits 7, 8, and 9, who charge comparable or higher rates for similar work in this district, and to whom this Court has awarded comparable rates. Mr. Freeman, who served on the Fee Petition Subcommittee of the Bench-Bar Committee of this Court from 2012-2013, noted that his firm would bill fee-paying clients for Mr. Katz's work at a rate of $500 to $525 per hour because of his skills, knowledge and experience, and based on Mr. Freeman's extensive knowledge of market rates for comparable work in the region. Similarly, Mr. Freemen stated that Ms. Bansal's billing rate would be $275 per hour at his firm, based on his knowledge of her skills, knowledge, and abilities.

Mr. Goldsmith, who has run his own law firm since 1992, practices primarily in the area of plaintiffs' employment litigation. He notes that Mr. Katz is one of very few practitioners in the Washington, D.C./Baltimore region who consistently represents low wage immigrant workers in their claims for unpaid wages, despite the small amount of damages these employees usually have. He notes further that he has reviewed GMGA's bill and believes that the fees requested represent a reasonable fee given the nature and progress of this case.

Mr. Zipin, a partner at Zipin, Amster & Greenberg, LLC, who practices employment law in Silver Spring, Maryland, reviewed Plaintiff's Complaint, the progress of litigation, and GMGA's bill. He, too, determined that Plaintiff's requested fees are reasonable given the nature of the case and the experience of her counsel.

6. Whether the Fee is Fixed or Contingent

This case was brought on a contingent basis, and/or with the expectation that fees would be paid pursuant to a fee petition. (*See* Exhibit "11" fee agreements between Plaintiff and GMGA). It is blackletter law that the fee-shifting provisions of the discrimination and wage statutes pleaded are designed to encourage attorneys to prosecute cases that vindicate the purposes of those statutes, even though the cases might be economically unattractive under a contingency fee agreement. *Hensley*, 461 U.S. at 433, n.7. That the representation of Plaintiff was undertaken at significant risk of loss for Plaintiff's counsel militates strongly in favor of the fees requested.

7. The Time Limitations Imposed by the Client or the Circumstances

This litigation was time intensive given the need to "front load" the fact investigation and file administrative discrimination charges fairly quickly so that the matter could proceed to court need be. In addition, the wage claims had to be developed absent the records employers are required to maintain pursuant to both federal and state wage and hour laws. Moreover, as was true in this matter, most low-wage, non-English speaking, low-wage employees are not knowledgeable about the legal system and thus require extensive education and counselling in order to make informed decisions regarding their cases.

8. Amount Involved and the Results Obtained

Plaintiff succeeded in her most important goal: to vindicate her rights under the discrimination and wage statutes pleaded. Defendant had illegally failed to pay Plaintiff and illegally fired her. Defendants' attempted to resolve this matter for a minimal payment and attempted to delay the litigation by refusing to appear. The judgment entered for Plaintiff is the

amount she prayed. This is a huge victory for a low-wage worker like Ms. Portillo, and if collected, will represent a life-changing sum of money.

9. <u>Experience, Reputation, and Ability of the Attorneys</u>

The attorneys' experience is set forth in the attached affidavits of Daniel A. Katz, Andrew Freeman, Leizer Goldsmith, and Philip Zipin. (Exhibits 6, 7, 8, and 9). Plaintiff's attorneys are highly skilled and experienced in the field of employment law, and specifically, discrimination and wage and hour litigation. Plaintiff's counsel are some of the small handful of attorneys who practice in this Court who are willing to represent low-wage workers, and include one of the few who has dedicated much of his career to the representation of low-wage, non-English speaking employees.

10. <u>"Undesirability" of the Case</u>

Although counsel did not find Plaintiff's case "undesirable," few attorneys specializing in employment law, including discrimination and wage cases, are willing to take such cases on a straight contingency basis, as Plaintiff's counsel has done here. This demonstrates that on a business level, the case is "undesirable" because of the financial risk assumed by Plaintiff's counsel over the life of the litigation. In addition, both Plaintiff and her potential witnesses are non-English speaking workers, and they are not familiar with federal court litigation. In counsel's experience, this translates into necessary, but compensable, additional attorney and legal staff hours spent in educating plaintiffs as to the legal process and procedures, as well as significant additional hours preparing discovery responses and preparing for mediation.

11. <u>Nature and Length of the Professional Relationship With the Client</u>

Plaintiff's counsel represented Plaintiff from the outset of this case and has not represented her in other matters.

9

12. Awards in Similar Cases

As detailed in the attached affidavit, Plaintiff's counsel has regularly received attorneys' fees at the customary, market rates. That has included the rate requested in this fee petition, consisted with Appendix B of the Local Rules of this District, as well as at rates set by the District of Columbia's *Laffey* Matrix.[2]

For the reasons outlined in this fee petition and accompanying documentation, an award in the amount of $31,838.00, consistent with the guidelines in Appendix B of the Local Rules, is reasonable.

B. Plaintiff is Entitled to Her Reasonable Costs

Plaintiff submits a list of all expenses reasonably incurred in this litigation and claimed here for reimbursement. *See* Exhibit 6-B. The expenses sought are the filing fee of $400, the reasonable file maintenance fee of $95.00, service of process costs of $82.50, on-line research fee of $44.08, copying fees of $80.70, copying, postage and fax fees of $32.96. All expenses sought are the type of costs that would regularly be billed to a fee-paying client.

C. Plaintiff is Entitled to the Attorneys' Fees Requested: Review by Appendix B Categories

As with most litigation raising claims of both illegal discrimination and illegal wage payment schemes, the successful prosecution of Plaintiff's case required substantial upfront factual and legal investigation. Plaintiff's counsel is also cognizant that litigation should be conducted as efficiently as possible. The request made herein is based upon the contemporaneous

---

[2] The *Laffey* Matrix rates were established by the United States District court for the District of Columbia in *Laffey v. Northwest Airlines*, 746 F.2d 4 (D.C.Cir. 1984), after an extensive survey of rates in Washington, D.C. The matrix has been updated annually by the United States Attorney's Office. *Laffey* rates are routinely accepted as market rates, avoiding repetitive and wasteful litigation over market rates in the area. The *Laffey* matrix is attached as Exhibit "10."

10

time, task, and expense records maintained by GMGA, which have been carefully reviewed. In the exercise of up front billing judgment, counsel eliminated from this fee request $15,562.00 in billed time, which is approximately 32.8% of the fees incurred in this matter. This "no charged" time accounts for: duplication of effort by either attorneys or law clerks; time spent by multiple attorneys in strategizing potential claims and defenses; some of the time spent by less experienced attorneys when drafting pleadings or other documents; and some of the otherwise compensable time spent drafting the motion and memorandum for fees and costs. The total attorneys' fees request is $31,838.00. The total attorneys' fees and costs requested is $32,492.54. The time for which Plaintiffs seek compensation is set forth in detail in Exhibit 6-A, which details the time spent on the case broken down by the ten categories detailed in Appendix B, four of which are applicable to this case.

        1.        <u>Case Development, Background Investigation, and Case Administration</u>

Before filing the Complaint, counsel for Plaintiff engaged in a careful investigation of Plaintiff's claims, including the factual underpinnings and applicable statutes. Counsel interviewed the Plaintiff, as well as potential witnesses. Counsel also reviewed all documentation then available, and made damages calculations to assess the cost-to-benefit ratio to the Plaintiff of pursuing litigation.

Counsel prepared and filed the EEOC charge and declaration in support thereof. Counsel additionally communicated with both EEOC and MCOHR officials assigned to investigate Ms. Portillo's complaint. Additionally, when contacted by an attorney who stated he was representing Defendants for purposes of settlement discussions, Ms. Portillo's counsel engaged him in discussions and reviewed the financial documents provided.

In this category Plaintiff is seeking compensation for 37.2 hours, which represents $9,352.00 in billed legal services. In the exercise of up-front billing judgment and of streamlining the fee petition process, counsel is not seeking compensation for 21.3 hours, which represents $5,486.50 in billed legal services.

2. Pleadings

Counsel devoted the necessary time to the development, service, and filing of the Complaint and other pleadings. In this category Plaintiff is seeking compensation for 20.3 hours, which represents $5,771.00 in billed legal services. In the exercise of up-front billing judgment and of streamlining the fee petition process, counsel is not seeking compensation for 8.7 hours, which represents $2,140.00 in billed legal services.

5. Motions Practice

Counsel devoted the time necessary for the entry of default. Counsel later devoted significant time to drafting and filing the motion for entry of default judgment and memorandum and exhibits in support thereof. In this category Plaintiff is seeking compensation for 27.3 hours, which represents $9,212.50 in billed legal services. In the exercise of up-front billing judgment and of streamlining the fee petition process, counsel is not seeking compensation for 8.3 hours, which represents $2,610.00 in billed legal services.

10. Fee Petition Preparation

Plaintiff spent the time necessary to document all time spent in the prosecution of this matter, and research and present the law supporting this fee request. In this category Plaintiff is seeking compensation for 15.9 hours, which represents $7,502.50 in billed legal services. In the exercise of up-front billing judgment and of streamlining the fee petition process, counsel is not seeking compensation for 11.4 hours, which represents $5,325.00 in billed legal services.

Summary

Pursuant to the explanations and arguments above, and that attached documentation, Plaintiff urges the Court to grant this motion and award her $31,838.00 in fees and $654.54 in costs, for a total attorneys' fees and cost award of $32,492.54. A proposed order is attached hereto.

Respectfully submitted,

___/s/_____
Daniel A. Katz (Bar No. 12026)
Marlene S. Ailloud (Bar No. 18974)
Lucy B. Bansal (Bar No. 06639)
The Law Offices of Gary M. Gilbert & Associates, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
T: (301) 608-0880
F: (301) 608-0881
dkatz@ggilbertlaw.com
mailloud@ggilbertlaw.com
lbansal@ggilbertlaw.com

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2017, the foregoing was mailed by first class mail to:

Intipuqueno Restaurant
2504 Ennalls Avenue
Silver Spring, MD 20902

Telvis Elizabeth Garcia
Intipuqueno Restaurant
2504 Ennalls Avenue
Silver Spring, MD 20902

___/s/_____
Daniel A. Katz (Bar No. 12026)

13