IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

MARINA PORTILLO,

    Plaintiff,

v.                                  Civil Case No.: PWG-15-3909

INTIPUQUENO RESTAURANT, *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Plaintiff Marina Portillo claims that she worked for Intipuqueno Restaurant and its owner-operator Telbis Elizabeth Garcia (together, "Intipuqueno") for more than a year, but was not paid for the overtime hours she regularly worked, did not receive any compensation other than tips, and was not paid "in full at least twice each month." Compl., ECF No. 1. According to Portillo, her employment ended when she was fired in retaliation for an epileptic seizure that she had while at work. *Id.* ¶¶ 51–56. Thereafter, she filed suit against Intipuqueno on December 22, 2015, bringing claims of discrimination in violation of federal, state, and local law, as well as claims of violations of federal and state wage payment laws.[1]

On August 21, 2018, the parties jointly moved for court approval of the settlement agreement they have executed. Jt. Mot. & Mem., ECF Nos. 60, 60-1. I find the net settlement

---

[1] Specifically, she alleges violations of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12112(a); the Maryland Human Rights Act ("MHRA"), Md. Code Ann., State Gov't § 20 606(a)(1)(i); and the Montgomery County Code ("MCC"), Montgomery Cty. Code § 27-19(a)(1)(A); as well as claims of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207(a); the Maryland Wage & Hour Law ("MWHL"), Md. Code Ann., Lab & Empl. §§ 3-413(b), 3-415(a); and the Maryland Wage Payment and Collection Law ("MWPCL"), Lab. & Empl. §§ 3-413(b), 3-507.2(a), (b).

amount of $78,000, comprised of $16,262.20 in wages, $3,825.00 in compensatory damages, and $57,912.40 in attorneys' fees, to be fair and reasonable in light of the facts of this case.

## I. BACKGROUND

Portillo worked as a server at Intipuqueno in Silver Spring, Maryland from January 2013 to June 29, 2014. Compl. ¶ 14. Portillo alleges that she worked 62 hours per week for 70 weeks in a 78-week period and did not work during the other 8 weeks. Pl.'s Disclosure of Damages 2, ECF No. 38.[2] She claims that she allegedly was discharged for having suffered an epileptic seizure at work. Compl. ¶ 56. For the entirety of the 78 weeks that she was employed, Portillo alleges that she never received a paycheck from Defendant and that her sole compensation was the tips she received from customers. *Id.* ¶ 40–41.

The Settlement Agreement "release[s] and forever discharge[s] the Employers [Intipuqueno Restaurant and Ms. Garcia] . . . of and from the Lawsuit and any and all actions with respect to Employee's tenure of employment at Intipuqueno Restaurant, at any time on or before the Effective Date." Agr. ¶ 5(a), ECF No. 60-2. The $78,000 settlement is comprised of $16,262.60 in wages, $3,825.00 in compensatory damages for Counts 1–3, and $57,912.40 in attorneys' fees. *Id.* ¶ 2.

## II. DISCUSSION

### a. FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S.

---

[2] Plaintiff initially alleged that she worked 51.5 hours per week for 78 weeks. Compl. ¶ 37.

2

697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### b. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The Joint

3

Motion and Memorandum makes clear that several issues are in *bona fide* dispute. Most importantly, the parties disagree about the number of hours Plaintiff worked per week, the number of total weeks that she worked, and the wage rate at which Plaintiff should be compensated. Jt. Mem. 3–4.

### c. Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

The first and second factors can be analyzed together. The parties have completed discovery, in addition to three 30-day extensions that I granted, and have negotiated the Settlement Agreement at a late stage in the litigation. *See* Scheduling Order, ECF No. 34; Extension #1, ECF No. 53; Extension #2, ECF No. 55; Extension #3, ECF No. 57. Due to a lack of record-keeping by Defendants, Plaintiff deposed five witnesses to establish her version of the facts—that she worked for 70 weeks, averaging 62 hours per week. Jt. Mem. 6. However, the parties have agreed that these depositions instead corroborate the Defendants' position, and thus have elected to use the Defendants' version of the facts—that Plaintiff worked 56 weeks, averaging 40 hours per week. *Id.* at 7. Lastly, the parties have agreed to use the minimum wage rate of $3.63 rather than $7.25 after due consideration of the materials produced in discovery. *Id.*; *see* Mem. Order & Op. 9–10, ECF No. 31.

With regard to factors three and four, the parties state that:

> all of the parties were represented by competent counsel and the settlement was reached after months of vigorous negotiations by counsel for both parties. On

4

> these facts alone, there is simply no reason for this Court to believe that this
> settlement agreement is the product of any type of fraud or collusion.

Jt. Mem. 7–8. I agree. As for the fifth factor, it is not relevant in this analysis, as it pertains to class actions. *See Lomascolo*, 2009 WL 3094955, at *10.

With regard to the sixth factor, Plaintiff estimates her maximum potential recovery for her three labor claims (Counts IV, V, and VI) to be $111,165.60, a figure that includes back pay and treble damages.[3] Jt. Mem. 6–7. The settlement amount of $16,262.60, comprised of $8,131.20 in back pay and $8,131.20 in liquidated damages, therefore amounts to approximately 15% of Plaintiff's maximum recovery. *See* Agr. ¶ 2. This percentage fairly compensates Plaintiff in light of the findings the parties made in discovery, which strongly favor Defendants' version of the events. Jt. Mem. 7.

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint. Agr. ¶ 5. A general release like this can render settlement agreements unreasonable. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). I do note, however,

---

[3] In addition, Plaintiff seeks $6,352.32 in compensation for her discrimination claims (Counts I, II, and III), for which the Settlement Agreement includes $3,825 in compensatory damages. Jt. Mem. 7. Because the settlement of the discrimination claims are not subject to mandatory court scrutiny and approval, I will not analyze the fairness and reasonableness of this figure.

that insofar as Plaintiff is releasing her claims, she is doing so while receiving $3,825 for the discrimination claims she brought in this suit. As explained above, the Agreement percentage for the wage claims fairly compensates the Plaintiff for the general release executed when considering the probability of Plaintiff's success on the merits of her wage claims and the amount of discovery undertaken.

The proposed settlement does not provide for an entry of judgment, and some courts view settlements without such a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014) (citing, *inter alia*, *Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)). But *Brooklyn Savings v. O'Neil*, 324 U.S. 697 (1945), on which these courts rely, did not "involve[] a settlement executed between an employer and employee as the result of a *bona fide* dispute as to the coverage of the FLSA." *Duprey*, 30 F. Supp. 3d at 410 (quoting *O'Connor v. United States*, 308 F.3d 1233, 1242 (Fed. Cir. 2002)). In the absence of clear binding authority to the contrary, however, when there are "*bona fide* disputes as to liability and the costs and risks of proceeding on the merits" a plaintiff "is permitted to agree that . . . accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.* This settlement, like the one in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*." *Id.* The amount provided in consideration for the release is fair and reasonable.

### d. Attorneys' Fees

Next, the Settlement Agreement's provisions regarding attorneys' fees must be assessed for reasonableness. *Saman*, 2013 WL 2949047, at *6. In an FLSA case, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee

to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Notably, to this end, "the wronged employee should receive his full wages *plus* the [liquidated or treble damages] penalty without incurring any expense for legal fees or costs." *Id.* (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) (emphasis added)); *see Robertson v. Alaska Juneau Gold Mining Co.*, 157 F.2d 876, 879 (9th Cir. 1946), *cert. granted in part, judgment modified*, 331 U.S. 793 (1947); *Skidmore v. John J Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947).

Pursuant to the Settlement Agreement, the Defendants will pay Portillo a sum of $78,000 total, with $16,262.60 designated to compensate her for wages, $3,825 designated as compensatory damages for her discrimination claims, and $57,912.40 designated to pay her attorneys' fees. Agr. ¶ 2. Thus, the Settlement Agreement provides for Plaintiff's full wages (albeit based on Defendants' calculations, which the evidence supports), plus liquidated damages, and a separate amount on top of that for attorneys' fees. *Id.*

The starting point in evaluating the reasonableness of attorneys' fees in FLSA cases is the lodestar approach. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). Traditionally, "[i]n calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

7

"[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19). However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984); *see Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (same). In Appendix B to its Local Rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000).

Although the attorneys' fees are almost three times the damages and represent approximately 74% of the total settlement, attorneys' fees awards may "substantially exceed [ ] damages" in FLSA cases. *See Almendarez v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *3 (D. Md. Aug. 25, 2010) (concluding that $84,058 attorneys' fee award was reasonable, even though jury verdict in favor of three of eight plaintiffs awarded plaintiffs only $3,200, $1,200, and $2,200 each); *e.g., Butler v. Directsat USA, LLC*, No. DKC-10-2747, 2016 WL 1077158, at *7 (D. Md. Mar. 18, 2016) (approving attorneys' fees award of $258,390.67 in FLSA collective action where plaintiffs had received between $54.36 and $4,197.78, for a total of approximately $36,000); *see also Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015) (finding "relatively modest fee of $15,516 [to be] reasonable" where one plaintiff received $5,500 and other plaintiff received $2,500, even though "the fee sought [was] nearly double the total recovery realized by Plaintiffs," given that "this is likely to occur in FLSA actions, where vulnerable plaintiffs may be vindicating important rights that entitle them to relatively modest compensation"). Indeed, "[t]he FLSA is a civil rights statute," and "[t]he Fourth Circuit has . . . recognized that '[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation.'" *Nelson v. A & H Motors, Inc.*, No. JKS-12-2288, 2013 WL 388991, at *2 & n.3 (D. Md. Jan. 30, 2013) (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006) (noting award of $349,244 in attorneys' fees in Title IX suit where court awarded only nominal damages, and $13,317 attorneys' fees award in Fair Housing Act case where court awarded only $1,000 in compensatory damages).

The parties did not address the *Johnson* factors; however, counsel's experience, the genuine dispute in this case, and the hours attributed to each stage of the litigation supports a finding that the number of hours expended were reasonable. Moreover, Portillo's attorneys have

attached a detailed summary of the requested attorneys' fees and costs using the guidelines set forth in this Court's Local Rules. Fee Summary 1–4, ECF No. 60-3; Loc. R. App'x B. Plaintiff's counsel recorded a total of $139,609.70 in billable fees and costs, while the Settlement Agreement provides for $57,912.40, or approximately 42% of the total fees and costs. Jt. Mem. 8–9. Further, the Agreement indicates that this amount is in addition to and not a part of the $20,087.60 to be paid to Portillo. Agr. ¶ 2; Jt. Mem. 8 ("The settlement agreement includes the payment of Plaintiff's attorney's [sic] fees and costs as a separately paid item."). Taking into account the period of litigation of almost four and a half years, which included extended discovery, depositions, motions practice, and a settlement conference, I find that $57,912.40 for fees and costs is reasonable.

III. **ORDER**

Accordingly, it is this 27th day of January, 2019, hereby ORDERED that:

1. The Joint Motion to Approve Settlement, ECF No. 60, IS GRANTED.
2. The Clerk is DIRECTED to CLOSE THE CASE.

/S/
Paul W. Grimm
United States District Judge

sam